AO (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA

## CRIMINAL COMPLAINT

vs.

CASE NUMBER: 6:11-mj-1106

CHAD WARNER
JENNA LARSON
GARY WASHINGTON
STACIE GLAPION
CEAUNDRA THOMAS
OLIVIA EMBRY
PAIGE SAVANT

I, Charles Johnsten, the undersigned complainant, being duly sworn, state the following

is true and correct to the best of my knowledge and belief. Beginning on a date unknown to

me, but not later than in or about May 2010, and continuing until at least February 16, 2011, in

Orange County, in the Middle District of Florida, and elsewhere, the defendants did,

> knowingly and with intent to defraud produce, use, or traffic in one or more
> counterfeit access devices, and conspire to produce, use, or traffic in one or
> more counterfeit access devices, such production, use, or trafficking affecting
> interstate or foreign commerce

in violation of Title 18, United States Code, Sections 371 and 1029(a). I further state that I am

a Special Agent with the United States Secret Service, and that this Complaint is based on the

following facts:

### SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof: ☒ Yes  ☐ No

Signature of Complainant
Charles Johnsten, USSS

Sworn to before me and subscribed in my presence,

at          Orlando, Florida

Honorable Donald P. Dietrich
United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

State of Florida                6:11-mj-1106, 1107, 1108, 1109, 1110, 1111, 1112, 1113,
                                1114, 1115, 1116, 1117, 1118

County of Orange

## MASTER AFFIDAVIT

I, Charles Johnsten, being duly sworn, state as follows:

### Introduction

1)      I am a Special Agent (SA) with the United States Secret Service (USSS) assigned
to the Orlando Field Office.  Among my duties as a Special Agent, I am charged with the
investigation of financial crimes, including bank fraud, wire fraud, identity fraud, credit card
fraud, and the manufacturing, possession, and passing of counterfeit private securities,
counterfeit United States currency, and counterfeit and fraudulent access devices, such as credit
cards, debit cards, and gift cards.

2)      The information in this affidavit is based on my personal knowledge, information
obtained from other law enforcement personnel, information obtained from corporate
investigators, and information obtained from financial and other banking institutions.  The
information set forth herein is provided solely for the purpose of establishing probable cause in
support of the requested arrest warrants, search warrants, and seizure warrants.  Because this
affidavit is submitted for the limited purpose of establishing such probable cause, it does not
include all of the details of this investigation of which I am aware.

### Arrest Warrants Requested

3)      This affidavit is made in support of an application for arrest warrants for **GARY
WASHINGTON (WASHINGTON), CHAD WARNER (WARNER), JENNA LARSON
(LARSON), STACIE GLAPION (GLAPION), CEAUNDRA THOMAS (THOMAS),**

1



**OLIVIA EMBRY (EMBRY),** and **PAIGE SAVANT (SAVANT)** for violations of Title 18,

United States Code. Sections 371 (conspiracy), 1028 (fraud and related activity in connection

with identification documents, authentication features, and information), 1029 (fraud and related

activity in connection with access devices). and 1343 (wire fraud).

### Search Warrants Requested

4)     This affidavit is also made in support of warrants to search (a) the residence of

**WASHINGTON, WARNER, GLAPION, EMBRY,** and **SAVANT,** located at **2560**

**Lyndscape St., Orlando, FL (the Lyndscape residence).** more specifically described in

attachment A, which is incorporated herein by reference; (b) the residence of **THOMAS** and

**LARSON,** located at **12620 Birchbark Court, Orlando, FL (the Birchbark residence),** more

specifically described in Attachment B, which is incorporated herein by reference: and (c) the

residence and the detached garage of **WHITT,** located at **3338 Arden Villas Blvd., Apt #25,**

**Orlando, FL** and **3326 Arden Villas Blvd., Garage Unit # 11, Orlando, FL (the Arden Villas**

**residence),** more specifically described in Attachment C, which is incorporated herein by

reference, for evidence, fruits, and instrumentalities of violations of Title 18. United States Code,

Sections 371 (conspiracy), 1028 (fraud and related activity in connection with identification

documents, authentication features, and information), 1029 (fraud and related activity in

connection with access devices), and 1343 (wire fraud). which evidence, fruits, and

instrumentalities are described more specifically in Attachment H, which is incorporated herein

by reference. Based on surveillance conducted by myself and other agents, examples of which

are detailed in this affidavit, and other information provided by local utilities and the U.S. Postal

Service, **WASHINGTON, WARNER, GLAPION, EMBRY,** and **SAVANT** are the residents

2

of the **Lyndscape residence**, **THOMAS** and **LARSON** are the residents of the **Birchbark residence**, and **WHITT** is the resident of the **Arden Villas residence**.

5)      This affidavit is also made in support of an application to search a **1999 Black Acura**, FL license plate N809KV, VIN #19UUA5640XA037058 registered to **WARNER**, more specifically described in Attachment D: a **2003 Black Hummer**, FL license plate 964YD, VIN #5GRGN23U13H130917 registered to **WARNER**, more specifically described in Attachment E; a **2002 Silver BMW**, FL license plate 940NJI, VIN #WBAGL63472DP50639 registered to **LARSON AND WARNER**, more specifically described in Attachment F; and a **2009 Blue Dodge Charger**, FL license plate ADUI29, VIN #2B3KA43D89H530528 registered to **LARSON**, more specifically described in Attachment G, for evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 371 (conspiracy), 1028 (fraud and related activity in connection with identification documents, authentication features, and information), 1029 (fraud and related activity in connection with access devices), and 1343 (wire fraud), which evidence, fruits, and instrumentalities are described more specifically in Attachment H.

### Seizure Warrants Requested[1]

6)      This affidavit is also made in support of an application for seizure warrants for the **1999 Black Acura, 2003 Black Hummer, 2002 Silver BMW, and 2009 Blue Dodge Charger** described more fully above.  All of the above listed vehicles were used to commit the violations of 18 U.S.C. §§ 1028 and 1029 described in this affidavit.

---

[1]   The United States requests seizure warrants in order to assure the availability of the vehicles for trial.  Due to the fact that the assets to be seized are easily movable, the United States contends a seizure warrant is the only means which assure that the vehicles will be available for trial.

**Initiation of the Investigation by the USSS Orlando Field Office**

7)     In or about September 2010, I was contacted by SA Brett Detzer of the USSS San Diego Field Office. SA Detzer informed me that he had discovered access device fraud that was occurring in the Middle District of Florida. According to SA Detzer, the USSS alerted American Express to a Common Point of Purchase/Compromise Site (CPP) that had been discovered at the SE Hotel in San Diego, CA. A CPP is a financial transaction site, often a store, hotel, or restaurant, or the computers supporting such a financial transaction site, from which credit and debit card numbers have been stolen, usually through electronic means. In this case, according to SA Detzer, the SE Hotel's computer servers had been compromised, or "hacked," and malicious software was found on the computer servers. Specifically, an unknown suspect accessed the SE Hotel's server through a Remote Desktop Protocol (RDP) port and uploaded malicious software onto the server. The malicious software then stored credit card magnetic track data, including account numbers and other information, from financial transactions at the CPP. The unknown suspect then remotely accessed the servers and obtained the credit card information that the malicious software stored. When SA Detzer reviewed the fraudulent activity related to the stolen credit card account information, he discovered a substantial amount of the fraudulent activity occurring at Target stores throughout Central Florida.

8)     The subjects of these arrest warrants, search warrants, and seizure warrants are those persons in Central Florida that agents have identified as using the credit card account numbers and other electronic data from the SE Hotel computer server data breach, and other CPPs, to make hundreds of thousands of dollars in fraudulent credit card transactions at Target and other retail stores. Thus, when in this affidavit a credit card account is said to be used

"fraudulently," it means that the credit card account number and related data was stolen via a CPP data breach and used without the authorization of the account holder. Further. based upon the wire transfer activity observed by agents that is discussed in this affidavit. I believe that the suspects purchase these credit card account numbers and related electronic data from computer hackers based in. or connected to, the country of Azerbaijan, and then use domestically available tools to manufacture the fraudulent credit cards, debit cards, gift cards, and other access devices that allow them to perpetrate the fraud.

### Historical Evidence Obtained from Target and American Express

9)      On October 3, 2010, I met with Melissa Trahan (Trahan), a Lead Investigator with Target Asset Protection, and reviewed copies of surveillance videos of fraudulent transactions at several Target locations throughout Central Florida.  Trahan provided surveillance videos of **WASHINGTON, LARSON, GLAPION, THOMAS, EMBRY. SAVANT**, and an unidentified person (**SUSPECT #1**) using fraudulent access devices inside of several Target stores in Central Florida.  Trahan also provided the suspect's vehicle information, including Florida license plate numbers.  Based upon my training and experience and my knowledge of this investigation. I believe that **WARNER** is an organizer of the criminal conspiracy, and in that role. he does not go into stores and make the retail transactions detailed in this affidavit.  Indeed, according to the information provided by Target, the suspects used the following vehicles during the course of their fraudulent activity: a **1999 Black Acura**. FL license plate N809KV, registered to **WARNER;** a **2003 Black Hummer**. FL license plate 964YDG, registered to **WARNER;** a **2002 Silver BMW**, FL license plate 940NJI. registered to **WARNER** and **LARSON;** and a **2009 Blue Dodge Charger**, FL license plate ADUI29, registered to **LARSON**.  Further. Trahan provided

5

agents with receipts listing the credit card numbers used by **WASHINGTON, LARSON, GLAPION, THOMAS, EMBRY, SAVANT,** and **SUSPECT #1**, along with surveillance videos of the fraudulent transactions. Those surveillance videos, examples of which are discussed in the following paragraphs, also show **WASHINGTON, LARSON, GLAPION, THOMAS, EMBRY, SAVANT,** and **SUSPECT #1** using the **1999 Black Acura**, the **2003 Black Hummer**, the **2002 Silver BMW**, and the **2009 Blue Dodge Charger** to facilitate the fraud.

10)    On February 10, 2011, USSS SA Jeffrey Starnes contacted Kristin Kenerson (Kenerson) of American Express about the fraud committed in this case. SA Starnes provided Kenerson with a spreadsheet of purchases and corresponding American Express credit card numbers used fraudulently at Target by **WASHINGTON, LARSON, GLAPION, THOMAS, EMBRY, SAVANT,** and **SUSPECT #1**. Kenerson researched the listed purchases and confirmed that the credit card numbers were used fraudulently to make those purchases. Kenerson further confirmed that, to date, and solely in relation to American Express credit cards, there currently is $186,898.08 of identified fraud related to this investigation.

11)    Based upon the information and video surveillance provided by Target, and the information provided by American Express, between May 2010 and December 2010, more than 200 American Express credit card numbers were used fraudulently by the suspects at Target stores in Central Florida. The following are examples of the fraudulent credit card activity committed by the subjects of this investigation; these transactions are a small sample of the total number of fraudulent transactions documented by Target, and it does not include all of the details of the investigation of which I am aware:

6

a) Surveillance video provided by Target shows that on May 30, 2010, at approximately 5:30 p.m., **THOMAS** and **EMBRY** went inside of the Target located at 325 North Alafaya Trail, Orlando, FL 32828. There, **THOMAS** and **EMBRY** used the following American Express credit card account numbers to make purchases: ****1006, ****2008, ****1000. Kenerson confirmed that those credit card account numbers were used fraudulently.

b) Surveillance video provided by Target shows that on October 15, 2010, at approximately 4:10 p.m., the **2009 Blue Dodge Charger** pulled into the parking lot of the Target located at 820 Oviedo Marketplace Blvd., Oviedo, FL 32765. **GLAPION, THOMAS,** and **LARSON** got out of the **2009 Blue Dodge Charger** and went into the Target. There, **GLAPION, THOMAS,** and **LARSON** used the following American Express credit card account numbers to make purchases: ****2016, ****1002, ****2009, ****2002, ****1007, and ****2006. Kenerson confirmed that those credit card account numbers were used fraudulently.

c) Surveillance video provided by Target shows that on November 15, 2010, at approximately 8:50 p.m., the **2009 Blue Dodge Charger** pulled into the parking lot of the Target located at 325 North Alafaya Trail, Orlando, FL 32828. **LARSON** got out of the **2009 Blue Dodge Charger** and went into the Target. There, **LARSON** used the following American Express credit card account numbers to make purchases: ****0617, ****0612, ****3502, ****9092, ****5275, ****7123, ****5829, ****5023, ****3502, ****5825, ****9871, ****1002, ****1008, and ****2007. Kenerson confirmed that those credit card account numbers were used fraudulently.

d) Surveillance video provided by Target shows that on December 1, 2010, at approximately

7

8:00 p.m., the **2002 Silver BMW** pulled into the parking lot of the Target located at 325 North Alafaya Trail, Orlando, FL 32828. **LARSON** got out of the **2002 Silver BMW** and went into the Target. There, **LARSON** used the following American Express credit card account numbers to make purchases: ****1007, ****1008, ****1004, and ****8000. Kenerson confirmed that those credit card account numbers were used fraudulently.

e) Surveillance video provided by Target shows that on December 7, 2010, at approximately 10:40 p.m., the **1999 Black Acura** pulled into the parking lot of the Target located at 325 North Alafaya Trail, Orlando, FL 32828. **GLAPION** and **SAVANT** got out of the **1999 Black Acura** and went into the Target. There, **GLAPION** and **SAVANT** used the following American Express credit card account numbers to make purchases: ****3002, ****2000, ****3007, ****1008, and ****1102. Kenerson confirmed that those credit card account numbers were used fraudulently.

f) Surveillance video provided by Target shows that on December 9, 2010, at approximately 10:00 p.m., the **1999 Black Acura** pulled into the parking lot of the Target located at 325 North Alafaya Trail, Orlando, FL 32828. **GLAPION** got out of the **1999 Black Acura** and went into the Target. There, **GLAPION** used the following American Express credit card account numbers to make purchases: ****1002, ****2001, ****3010, and ****1006. Kenerson confirmed that those credit card account numbers were used fraudulently.

g) Surveillance video provided by Target shows that on December 13, 2010, at approximately 7:30 p.m., the **2003 Black Hummer** pulled into the parking lot of the Target located at 325 North Alafaya Trail, Orlando, FL 32828. **GLAPION** and

8

SAVANT got out of the **2003 Black Hummer** and went into the Target. There,
**GLAPION** and **SAVANT** used the following American Express credit card account
numbers to make purchases: ****4037, ****7006, ****1002, ****7006, ****1003,
****2006, ****3005, ****3004, ****1008, ****1513, and ****1006. Kenerson
confirmed that those credit card account numbers were used fraudulently.

h) Surveillance video provided by Target shows that on December 17, 2010, at
approximately 5:40 p.m., the **2003 Black Hummer** pulled into the parking lot of the
Target located at 325 North Alafaya Trail, Orlando, FL 32828. **GLAPION,**
**WASHINGTON, SAVANT and SUSPECT #1** got out of the **2003 Black Hummer** and
went into the Target. **GLAPION, WASHINGTON, SAVANT,** and **SUSPECT #1** used
the following American Express credit card account numbers to make purchases:
****4037, ****7006, ****1002, ****7006, ****1003, ****2006, ****3005, ****3004,
****1008, ****1513, and ****1006. Kenerson confirmed that those credit card account
numbers were used fraudulently.

**USSS Two-Day Surveillance of the Suspects**

12)     On February 15, 2011 and February 16, 2011, other USSS agents and I,
conducted surveillance of the suspects. During the surveillance, agents saw **WASHINGTON,**
**WARNER, LARSON, GLAPION, THOMAS, WHITT,** and two unidentified persons
(**SUSPECT #2** and **SUSPECT #3**) engaging in fraudulent credit card transactions similar to the
American Express transactions at Target stores detailed in the previous paragraphs. During the
two days that agents followed the suspects, the suspects made approximately $20,419.24 in
successful fraudulent credit card purchases, and attempted to make an additional $9,426.16 in

9

credit card purchases. In doing so, the suspects used approximately fifty (50) fraudulent MasterCard credit card numbers, five Target Visa gift/debit cards, which were purchased using the proceeds from prior fraudulent credit card transactions, and two Target gift cards, which were also purchased with the proceeds from prior fraudulent credit card transactions.

Surveillance - February 15, 2011

13) On February 15, 2011, agents of the Secret Service and other law enforcement officers conducted surveillance of the **Lyndscape residence** and the **Birchbark residence.**

14) At about 2:17 p.m., the **2003 Black Hummer** left the **Birchbark residence**. drove to the Waterford Lakes shopping center, located in Orlando, FL, and parked near a Barnes and Nobles store. The **2003 Black Hummer** parked near another Hummer. **WARNER** got out of the **2003 Black Hummer** and met with **WHITT**. After meeting with **WARNER**, **WHITT** and an unknown female got into the other Hummer and left the Barnes and Nobles parking lot. **WHITT** and the unknown female drove to the Waterford Lakes Target, located at 325 North Alafaya Trail. Orlando, FL 32828. At about 3:25 p.m., **WHITT** and the unknown female left the Target store with shopping bags and placed those bags in the Hummer. **WHITT** and the unidentified female then drove to the Arden Villas apartment complex, Building 3326. where **WHITT** and the unidentified female pulled into the detached garage at the **Arden Villas residence**. **WHITT** and the unidentified female retrieved the Target bags from the Hummer and walked out of the garage and in the direction of the **Arden Villas residence**.

15) Following the surveillance. Target Investigator Amy Hernandez (Hernandez) told agents that **WHITT** and the unidentified female used two Target gift cards, one ended in 944 and one ended in 988. Hernandez confirmed that the gift card which ended in 944 was

10

purchased on December 15, 2010 using an American Express credit card which ended in

****1013 (declined) and a Visa credit card which ended in ****2147 (approved).  Hernandez

also confirmed that the gift card which ended in 988 was purchased on December 31, 2010 using

an American Express credit card which ended in ****1180.  Trahan had already provided agents

with Target surveillance video that showed **SAVANT** and **GLAPION** purchase the gift card that

ended in 988 and use the **2003 Black Hummer** to drive to and from Target.  Kenerson also

confirmed that the American Express credit cards ending in ****1013 and ****1180 were used

fraudulently.  In addition, I met with management at Arden Villas apartment complex and

confirmed that **WHITT** currently rents the detached garage unit into which he drove his vehicle

and that **WHITT** rents apartment # 25 in building number 3338, the **Arden Villas residence**.

    16)    After meeting with **WHITT**, **WARNER** drove the **2003 Black Hummer** back to

**the Birchbark residence** and, at about 2:55 p.m., **GLAPION** and **SUSPECT #2** left the

**Birchbark residence** in the **2003 Black Hummer** and drove to IKEA, located at 4092 Eastgate

Drive, Orlando. FL.  At approximately 4:20 p.m., **GLAPION** and **SUSPECT #2** made a

purchase at IKEA, including a mattress, and used the following five Target Visa Gift/Debit

cards: 4718499214809500, 4718498240521089, 4718499266393080. 4718498251319373, and

4718499233551463.  **GLAPION** and **SUSPECT #2** loaded the mattress into the **2003 Black

Hummer** and left IKEA.  At about 5:49 p.m., **GLAPION** and **SUSPECT #2** arrived at the

**Lyndscape residence.**  **GLAPION** and **SUSPECT #2** then unloaded the mattress and brought

it into the **Lyndscape residence.**

    17)    Following the surveillance. Target Investigator Trahan confirmed that these

Target Visa Gift/Debit cards were purchased between February 6, 2011 and February 10. 2011,

and that four MasterCard credit card numbers were used to acquire them: ****8258 (USAA),

****7899 (USAA), ****7460 (Citigroup), and ****7461 (Citigroup). Agents then contacted

Mike Scott (Scott), Senior Investigator for Citigroup, who confirmed that that the Citigroup

credit card account number ending in ****7460 was used fraudulently. Scott further stated that

the Citigroup credit card account number ending in ****7461 is an invalid account number.

Video surveillance was provided by Target Investigator Trahan that showed **LARSON** used the

Citigroup credit card ending in ****7460 on February 7, 2011 to purchase one of the Target Visa

Gift/Debit cards listed above. Target video surveillance also showed **LARSON** used the

Citigroup credit card ending in ****7899 on February 6, 2011 to purchase two of the Target

Visa Gift/Debit cards listed above. SA Starnes also contacted George Davis (Davis), USAA

Corporate Security, who confirmed that the above-listed USAA credit card account numbers

were used fraudulently.

18)     At about 3:06 p.m., **LARSON** drove the **2009 Dodge Charger** from the

**Birchbark residence** to the Target located at 325 N. Alafaya Trail, Orlando, FL. At about 3:16

p.m., **LARSON** left the Target with a small bag and drove the **2009 Dodge Charger** back to the

**Birchbark residence**. **LARSON** carried the bag into the **BIRCHBARK residence**.

19)     At about 5:20 p.m., **LARSON** drove the **2009 Blue Dodge Charger** from the

**Birchbark residence** to the Winn Dixie grocery store located at 12500 Lake Underhill Road,

Orlando, FL. **LARSON** went into the store and walked to the customer service desk. There,

**LARSON** filled out a Western Union money transfer order, approached customer service, and

completed the wire transaction. The amount of the transaction was $1,067.00 ($999.00 plus a

$68.00 fee). According to the paperwork that **LARSON** filled out, she recorded her name as

12

"Taylor Smith," with an address of 852 Palm Bay Road, Palm Bay, FL 32822. **LARSON** listed

a phone number of 305-804-7977. **LARSON** listed the "Expected Payout Location" to be the

country of Azerbaijan, and listed the receiver's name as "Alper Erdogan." **LARSON** then drove

the **2009 Dodge Charger** back to the **Birchbark residence**. Based upon my training and

experience and the knowledge of other law enforcement agents with whom I have spoken about

this investigation, I believe that payments such as these wire transfers to Azerbaijan are for the

purchase of stolen credit card account numbers and other electronic data, such as the stolen SE

Hotel server data, that, in conjunction with certain other items such as white plastic and card

embossers, are used in the manufacture of fraudulent credit cards, debit cards, gift cards, and

other access devices.

   20)   At about 6:10 p.m., **WASHINGTON** drove the **2009 Blue Dodge Charger** from

the **Birchbark residence** to the same Winn Dixie located at 12500 Lake Underhill Road,

Orlando, FL. There, **WASHINGTON** walked to the customer service desk and picked out a

Western Union money transfer form. **WASHINTON** filled out the form and completed the wire

transfer at the customer service counter. **WASHINGTON** conducted a money transfer to "Alper

Erdogan" in the amount of $543.00 ($500.00 plus a $43.00 fee). **WASHINGTON** also listed

the "Expected Payout Location" as the country of Azerbaijan. **WASHINGTON** listed his name

as "James Allen," with an address of 258-27 147th Ave, Rosedale, NY, 11422. He listed his

phone number as (718) 998-0691.

   21)   At about 6:35 p.m., **LARSON** and **THOMAS** left the **Birchbark residence** in

the **2009 Dodge Charger** and drove to the Target located at 7601 West Colonial Drive, Orlando,

FL. There, **LARSON** and **THOMAS** used MasterCard credit card numbers ****9716 (Bank of

America), ****5360 (Wells Fargo), ****8287 (Bank of America), and ****9630 (Bank of America).  At about 7:29 p.m., **LARSON** and **THOMAS** left that Target and drove to another Target located at 3343 Daniels Road, Winter Garden, FL.  There, **LARSON** and **THOMAS** used MasterCard credit card numbers ****9600 (Bank of America) and ****6850 (Barclay's Bank).  At about 8:20 p.m., after they made purchases at that Target, both **LARSON** and **THOMAS** placed shopping bags into the trunk of the **2009 Dodge Charger** and then drove to a Petsmart store in the same shopping center.  At the Petsmart, **LARSON** and **THOMAS** used a MasterCard ending in ****9600, and attempted use another credit card (with an unknown card number) to purchase two Petsmart gift cards, but the credit card was declined.

22)    Following the surveillance, SA Starnes contacted Bank of America Senior Claims Analyst John Jensen (Jensen), who confirmed that that the above-listed Bank of America credit card account numbers were used fraudulently.  SA Starnes also contacted Barclay's Bank Special Investigator Steve Lenderman (Lenderman), who confirmed that the above-listed Barclay's credit card account number was used fraudulently.  In addition, SA Starnes contacted Wells Fargo Bank Financial Crimes Investigator Tenelle Harris (Harris), who confirmed that that the above-listed Wells Fargo credit card account number was used fraudulently.

23)    At about 8:37 p.m., **LARSON** and **THOMAS** left Petsmart and placed shopping bags into the **2009 Dodge Charger** and then traveled to the Target located at 2660 E. Highway 50, Clermont, FL.  There, **LARSON** and **THOMAS** used a MasterCard credit card number ending in ****8624 (Bank of America).  At about 9:08 p.m., **LARSON** placed a small shopping bag into the trunk of the **2009 Dodge Charger**.  **LARSON** and **THOMAS** then drove back to

14

the **Birchbark residence.** **LARSON** and **THOMAS** carried the bags into the **Birchbark residence** from the **2009 Dodge Charger.**

24) Following the surveillance. Bank of America Senior Claims Analyst Jensen confirmed that that the above-listed Bank of America credit card account number was used fraudulently.

Surveillance - February 16, 2011

25) On February 16, 2011, agents of the Secret Service and other law enforcement officers continued their surveillance of the **Lyndscape residence** and the **Birchbark residence.**

26) At about 12:58 p.m., **LARSON** and **THOMAS** left the **Birchbark residence** in the **2009 Dodge Charger** and drove to the Target located at 718 Maguire Blvd., Orlando, FL. After they made purchases in Target. **LARSON** and **THOMAS** placed their shopping bags into the trunk of the **2009 Dodge Charger.** At about 1:33 p.m., **LARSON** and **THOMAS** left the Target in the **2009 Dodge Charger** and drove to another Target located at 120 W. Grant Street, Orlando, FL.. There, **LARSON** and **THOMAS** made purchases using MasterCard credit card numbers of ****5819 (Capital One Bank) and ****4903 (GHA Federal Credit Union). **LARSON** and **THOMAS** left the Target and placed their bags into the **2009 Dodge Charger.** At about 2:06 p.m.. **LARSON** and **THOMAS** drove back to the **Birchbark residence** and carried their bags into the residence.

27) Following the surveillance, SA Starnes contacted Capital One Investigator Joe Takai (Takai). who confirmed that the above-listed Capital One credit card account number was used fraudulently. SA Wrenn contacted Susan Ogilvie (Ogilvie) of GHA Federal Credit Union,

15

who confirmed that the above-listed GHA Federal Credit Union credit card account number was
used fraudulently.

28)    At about 3:40 p.m., **WARNER** drove the **2003 Black Hummer** to the Winn
Dixie located at 7382 E. Curry Ford Road, Orlando, FL. There, **WARNER** completed two wire
transfers. Western Union transfer documents showed that **WARNER** conducted a wire transfer
in the amount of $274.00 ($250.00 + $24.00 fee) using the name "Alex Rodriguez." with an
address of 1400 E 8th Street, Orlando, FL. **WARNER** listed the "Expected Payout Location" as
Ft. Lauderdale, FL. The receiver of the transfer was listed as "Cassandra Navarro." For the
second wire transfer, **WARNER** also used the name of "Alex Rodriguez" and address of 1400 E
8th Street, Orlando, FL. **WARNER** also made a payment of $318.99 ($306.00 + $12.99 fee) to
Tyner Associates, which has a listed address in Nevada. Based upon an Internet search of
publicly available records and consultations with other USSS agents familiar with the company. I
know that Tyner Associates is a company that specializes in bar code scanners. card writers,
embossers, tippers. and magnetic stripe readers. Based on my training and experience, I know
that those items are used in the production of fraudulent credit cards, debit cards. gift cards, and
other access devices, and I believe that the subjects of this investigation are using such items, in
conjunction with the stolen credit card account numbers and other data, to manufacture the
fraudulent credit cards and other access devices that they use to make the retail purchases
detailed in this affidavit. Further, **WARNER**'s likely involvement in purchasing the materials
necessary to manufacture the fraudulent access devices is consistent with my belief concerning
his role as an organizer of the criminal conspiracy.

29)     At about 4:19 p.m., **WASHINGTON** and **SUSPECT #3** drove to the Target store located at 4305 Norfolk Parkway, Melbourne, FL in a white Toyota Camry that agents later determined was a rental vehicle. There. **WASHINGTON** and **SUSPECT #3** made purchases using MasterCard credit card numbers ****2508 (Wells Fargo) and ****0699 (Town North Bank). At about 4:39 p.m., **WASHINGTON** and **SUSPECT #3** loaded shopping bags into the trunk of the Camry and left the Target parking lot. **WASHINGTON** and **SUSPECT #3** then drove to the Target store located at 2750 West New Haven Avenue, Melbourne. FL. There, **WASHINGTON** and **SUSPECT #3** made purchases using MasterCard credit card numbers ****7820 (Bank of America) and ****5819 (Bank of America).

30)     Following the surveillance. Bank of America Senior Claims Analyst Jensen confirmed that the above-listed Bank of America credit card account numbers were used fraudulently. SA Starnes also contacted Town North Bank VP of Risk Operations Joe Voautrin (Voautrin), who confirmed that that the above-listed Town North Bank credit card account number was used fraudulently. Wells Fargo Bank Financial Crimes Investigator Harris confirmed that that the above-listed Wells Fargo Bank credit card account number was used fraudulently.

31)     At about 5:53 p.m., **WASHINGTON** and **SUSPECT #3** drove to the Target located at 8455 N. Wickham Rd., Viera. FL. There. **WASHINGTON** and **SUSPECT #3** made purchases using MasterCard credit card numbers ****5819 (Bank of America) and ****4471 (Bank of America).

32)     Following the surveillance, Bank of America Senior Claims Analyst Jensen confirmed that that the above-listed Bank of America credit card account numbers were used fraudulently.

33)     At about 7:30 p.m., **WASHINGTON** and **SUSPECT #3** went to the Merritt Island Target located at 250 Crocket Blvd., Merritt Island, FL.  There, **WASHINGTON** and **SUSPECT #3** made purchases using MasterCard credit card numbers ****4471 (Bank of America) and ****5819 (Bank of America).  At about 8:09 p.m., **WASHINGTON** and **SUSPECT #3**  drove to 777 E. Merritt Island Causeway, Merritt Island, FL (the Merritt Island Mall).  There, **WASHINGTON** and **SUSPECT #3** made purchases at the following stores: **SUSPECT #3** used an American Express Target prepaid gift card, # 374328812526377, to make a purchase at Journey's.  When **SUSPECT #3** left Journey's agents obtained the prepaid gift card that **SUSPECT #3** left behind.  **WASHINGTON** made purchases at other stores, including Champs, Sid's Men's Fashion, and Bath and Body Works.  At about 8:49 p.m., **WASHINGTON** and **SUSPECT #3** placed their shopping bags in the Camry, left the Mall, and drove to the **Lyndscape residence**.  They took the shopping bags out of the Camry and brought them into the **Lyndscape residence**.

34)     Following the surveillance, Bank of America Senior Claims Analyst Jensen confirmed that that the above-listed Bank of America credit card account numbers were used fraudulently.

### Use of Computer Equipment in the Manufacture of Fraudulent Access Devices

35)     Through my experience and training, my knowledge of this investigation, and information provided to me by other law enforcement personnel and corporate investigators, I

18

have learned that the access devices that have been utilized by the suspects in this investigation were compromised via a network intrusion of at least six different sources, or CPPs. Suspects that commit this type of computer crime are commonly referred to as "Hackers." Once a data breach occurs and credit card information is downloaded, the "Hacker" will sell the credit card information to a "buyer." It is believed that the suspects in this case are wiring money to a suspect in the country of Azerbaijan in payment for the credit card information they are receiving and using. Further, the exchange of this type of credit card information is commonly done from one computer to another computer via the internet.

36) Based on my training and experience, I know that when an individual uses a computer to obtain unauthorized access to a victim's credit card account information over the Internet, and when an individual sells or purchases that information, or otherwise transfers or acquires that information for use or dissemination, the computers involved will generally serve both as instrumentalities for committing the crime and also as a storage device for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage device for evidence of crime. Based upon my training and experience, I believe that a computer used to commit a crime of this type may contain records, data, and information relating to or reflecting, among other things, the following: how the computer was used, information that was sent or received, the manner in which crimes were committed using access devices, credit cards, and debit cards, ATM transactions, purchases, money withdrawals, money transfers, and other financial transactions, account information and the opening of accounts, passwords, access codes, user names, and other identifiers, ownership or use of the computers, and unauthorized access to

19

accounts, websites, and computers.

37)    Particularly, in the access device fraud scheme at issue in this affidavit, the participants in the scheme likely produced the access devices using credit card information obtained via a computer attached to the Internet. Once acquired, the information is entered into a credit card encoding machine. Computer software and files related to the encoding process remain on computers and computer storage devices for extended periods of time and are often recoverable using forensic techniques even if they are deleted by the users of the computer equipment.

### Legal Authority for Seizure of Vehicles

38)    As set forth in this affidavit, there is probable cause to believe that the **1999 Black Acura**, the **2003 Black Hummer**, the **2002 Silver BMW**, and the **2009 Blue Dodge Charger** facilitated violations of 18 U.S.C. §§ 1028 and 1029 and are, therefore, subject to criminal forfeiture by the United States, pursuant to 18 U.S.C. §§ 1028(b)(5) and 1029(c)(1)(C).

39)    The Court's authority to order criminal forfeiture of property for violations of 18 U.S.C. § 1028 is found in 18 U.S.C. § 1028(b)(5). Section 1028(b)(5) provides for the criminal forfeiture of "any personal property used or intended to be used to commit" violations of 18 U.S.C. § 1028. The Court's authority to order criminal forfeiture of property for violations of 18 U.S.C. § 1029 is found in 18 U.S.C. § 1029(c)(1)(C). Similarly, 18 U.S.C. § 1029(c)(1)(C) provides for the criminal forfeiture of "any personal property used or intended to be used to commit" violations of 18 U.S.C. § 1029. The Court may issue a seizure warrant for violations of 18 U.S.C. §§ 1028 and 1029 pursuant to 21 U.S.C. § 853(f), as incorporated by 18 U.S.C. § 1028(g) and 1029(c)(2), respectively.

20

## Conclusion

40)    WHEREFORE, I attest that there is probable cause for a warrant to arrest,

**WASHINGTON, WARNER, LARSON, GLAPION, THOMAS, EMBRY,** and **SAVANT,**

and believe that the items listed in Attachment H are located at **the Birchbark residence, the**

**Lyndscape residence, and the Arden Villas residence**, more specifically described in

Attachments A, B, and C, and inside the **1999 Black Acura**, the **2003 Black Hummer**, the **2002**

**Silver BMW**, and the **2009 Blue Dodge Charger**, identified more fully in Attachments D, E, F,

and G, and respectfully request that a search warrant be issued commanding myself or any other

duly authorized law enforcement official to search those locations and vehicles and to seize such

items as evidence and analyze them at another location, as they are evidence, fruits, and

instrumentalities of criminal violations of Title 18, United States Code, Sections 371, 1028,

1029, and 1343.

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

CHARLES JOHNSTEN, SPECIAL AGENT
UNITED STATES SECRET SERVICE

Sworn and subscribed before me
this ___ th day of February, 2011.

HON. DONALD P. DIETRICH
UNITED STATES MAGISTRATE JUDGE

21

## ATTACHMENT A

### Description of Property to be Searched

The **Lyndscape residence** - The residence located at **2560 Lyndscape St., Orlando, FL, 32833,** is a two story home located off of Lyndscape St.. Orlando, FL.  The residence to be searched is tan in color and is on the east side of the roadway.

## ATTACHMENT B

### Description of Property to be Searched

The **Birchbark residence** - The residence located at **12620 Birchbark Court, Orlando, FL 32828,** is a two story home located off of Birchbark Court, Orlando, FL. The residence to be searched is gray in color and is in a cul-de-sac.



## ATTACHMENT C

## Description of Property to be Searched

The **Arden Villas residence** - The residence located at **3338 Arden Villas Blvd., Apt #
25, Orlando, FL 32826,** is a yellow in color apartment building and is located off of Arden
Villas Blvd in the Arden Villas apartment complex. The residence to be searched is on the third
floor of the apartment complex building. **Garage Unit #11** is located at **3326 Arden Villas
Blvd., Orlando, FL 32826,** and is missing the actual number designation; however, units 9, 10,
and 12 are all physically attached to their respective units following in sequential order. Garage
Unit # 11 is attached to apartment building 3326 which is in nearby proximity to building 3338.

24



## ATTACHMENT D

### Description of Vehicle to be Searched and Seized

**1999 Black Acura**, Florida License Plate N809KV, Vehicle Identification Number

19UUA5640XA037058



## ATTACHMENT E

### Description of Vehicle to be Searched and Seized

**2003 Black Hummer** H2, Florida License Plate 964YDG, Vehicle Identification Number

5GRGN23U13H130917

## ATTACHMENT F

### Description of Vehicle to be Searched and Seized

**2002 Silver BMW**, Florida License Plate 940NJI, Vehicle Identification Number

WBAGL63472DP50639

## ATTACHMENT G

### Description of Vehicle to be Searched and Seized

**2009 Blue Dodge Charger**, Florida License Plate ADUI29, Vehicle Identification

Number 2B3KA43D89H530528

### ATTACHMENT H

### Items to be Seized

The following materials, in the **Lyndscape residence**, the **Birchbark residence**, the **Arden Villas residence**, the **1999 Black Acura**, the **2003 Black Hummer**, the **2002 Silver BMW**, and the **2009 Blue Dodge Charger,** which constitute evidence of the commission of, contraband, the fruits of crime, or instrumentalities of violations of Title 18, United States Code, Sections 371, 1028, 1029 and 1343.

1.      All credit cards, debit cards, and gift cards, and all items that are evidence or indicia of the production, manufacture, distribution, storage, transportation, and uttering of counterfeit credit cards;

2.      All computers including CPU's, monitors, network communication devices, modems, printers, external or connected devices used for accessing computer storage media, as well as hardware and software;

3.      All electronic and computer storage media, to include items such as floppy disks, thumb drives, hard drives, DVD disks, CD-Rom disks or other magnetic, optical, or mechanical storage;

4.      Digital files and file remnants containing spreadsheets or any other documents related to the manufacture, production, distribution, of access devices;

5.      Documentation containing or displaying passwords, access codes, user names or other identifiers necessary to examine, operate or activate specific equipment, hardware, or software;

6.      Any safes used to store valuables such as Credit Cards;

7.      Any and all paging devices and cellular telephones, digital or otherwise, and bills



or receipts relating to the leasing/renting of the paging devices and cellular telephones.

8.      Bank statements, loan applications, wire transfer information, money drafts, letters of credit, money orders, cashier checks, bank checks, safe deposit box keys, vault keys, safes, any and all documents relating to banking activities.

9.      Records relating to employment, wages earned and paid and any other compensation records.

10.     Records relating to local, state, and federal personal business income, sales and service taxes, including but not limited to, computation notes and records used for tax purposes.

11.     Records and ledgers, storage facility documents, account books, notes, names and/or code names or nicknames, and/or identifying information reflecting customers and/or suppliers, amounts of counterfeit credit cards bought, sold or manufactured, and amounts of money, paid, owed or collected. Any and all receipts reflecting the use of any credit card, debit card, and/or gift card.

12.     Any and all appointment calendars.

13.     Any and all customers lists, other manufacturer or distributor lists, or any notes containing the individual names of such persons, telephone numbers and/or addresses of these customers, manufacturers, or distributors, and any corresponding records of accounts receivable, money paid or received, counterfeit access devices or documents supplied or received, cash received to be paid or intended to be paid for counterfeit access devices.

14.     Telephone and address books or notes containing telephone numbers and addresses of co-conspirators or other such records or photographs which indicate a criminal association between co-conspirators. Any identification documents of individuals whose names have been associated with fraudulent access devices.

15.    Vehicles registered to the occupants of the target residence, under the care, custody or control or on the property on which the target residence is situated, which may contain fraudulent or counterfeit access devices, or cash used to facilitate illegal activity, or which is the proceeds of criminal activity.